UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

JOHN DOE,
Individually and on behalf of others similarly situated


-vs-                                    Case No.
                                        Hon.
                                        JURY TRIAL DEMANDED

FIRST ADVANTAGE LNS SCREENING SOLUTIONS, INC.,

    Defendant

## COMPLAINT & JURY DEMAND

Plaintiff John Doe ("Plaintiff"), by and through his attorneys, and on behalf of himself, the Putative Classes set forth below, and in the public interest, brings the following class action Complaint against Defendant First Advantage LNS Screening Solutions, Inc. pursuant to the federal Fair Credit Reporting Act ("FCRA").

## INTRODUCTION

1.     This consumer class action is brought under the FCRA against a consumer reporting agency that systematically violates the basic protections afforded to consumers under the FCRA.

2.     Defendant First Advantage routinely includes information in its background reports about criminal cases that have been dismissed pursuant to the Holmes Youthful Trainee Act ("HYTA"), M.C.L. § 762.11.  Pursuant to HYTA, certain juvenile offenses are dismissed after the juvenile has complied with certain pre-judgment conditions.  As a matter of law, cases dismissed pursuant to HYTA are not convictions because judgment is withheld.  In spite of this, Defendant relies on outdated data purchased in bulk and misleadingly reports those offenses as though the individual was sentenced, as though the case was finally disposed of, and as though the individual was convicted of a crime.  First Advantage's failure to utilize reasonable and strict procedures to avoid reporting of inaccurate and incomplete information violates 15 U.S.C. §§ 1681e(b) and 1681k.

3.     Defendant's practices were routine and systematic.  Plaintiff therefore asserts claims for damages on behalf of himself and the proposed classes of similarly situated individuals.

## Jurisdiction

4.     John Doe brings this lawsuit pursuant to 15 U.S.C. § 1681 *et seq.*

5.     This action presents a federal question and as such, jurisdiction arises under 28 U.S.C. §1331 and 15 U.S.C. §1681 *et seq.*

6.     John Doe was concretely harmed by Defendant's illegal conduct.

Specifically, Defendant First Advantage harmed Doe by reporting false and defamatory information about him, claiming that he was a convicted felon when in fact he is not.   First Advantage's publication of that false and defamatory information about him to his prospective employer led him to lose a job.  Doe also suffered emotional distress as a result of Defendant's illegal actions.

## Parties

7.     John Doe resides in Wyandotte and is a citizen of MI.

8.     John Doe is a natural person and is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq* ("FCRA") at §1681a(c).

9.     Defendant First Advantage Screening LNS Screening Solutions, Inc. ("First Advantage") is a corporation which sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective employers.  First Advantage is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a.

10.     Venue is proper within the Eastern District of Michigan because the events described in this complaint transpired in Southeast Michigan within this district and Defendant does business within this district.

## STATUTORY BACKGROUND

11.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

12.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

13.     Congress was particularly concerned about the use of criminal background reports in the employment context, and therefore defined the term "consumer reports" to include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

**FCRA Requirements That Apply to Consumer Reporting Agencies**

14.     Through the FCRA, Congress required consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681b(b).

15.     Congress imposed even more stringent requirements on consumer reporting agencies who were reporting public record information in reports that were going to be used for employment purposes. Specifically, Congress required that either the consumer reporting agency "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date" or that the consumer reporting agency send a contemporaneous notice to the consumer informing the consumer that it was reporting such information and identifying the recipient.  15 U.S.C. §1681k.

## Factual Allegations as to Plaintiff Doe

16.     In April 2014, Mr. Doe sought employment with Sentech.

17.     Sentech is a temporary staffing agency, operating in the Southeast Michigan area.

18.     Sentech provides employers access to "[P]rescreened, ready-to-work skilled tradesmen and light industrial workers."[1]

19.     Sentech offers its clients the ability to relieve themselves of ". . . the burden of recruiting, screening and vetting candidates while you focus on core

_____

[1]Sentech web site http://www.sentechservices.com/job-recruiters-detroit/ last visited April 13, 2016.

tasks."[2]

20.     As part of its ordinary and regular business practices, Sentech uses consumer reports to determine the eligibility of applicants for employment for its own benefit and those of its customers.

21.     Sentech accepted Mr. Doe's application and placed him for work with Hazen, one of its customers.

22.     After placing Doe for work with Hazen, and after Doe had already begun working for Hazen, on April 24, 2014, Sentech procured a background report on Doe from First Advantage. A redacted copy of that report is attached hereto as Exhibit 1.

23.     The report delivered by First Advantage contained information about Mr. Doe having been sentenced to probation for a period of between 28 and 360 days for the committing the crime of Larceny from a Motor Vehicle.

24.     At the time First Advantage sent its report to Sentech, it did not notify Doe of the fact that public record information was being reported by it, nor did it provide Doe with the name and address of the person to whom such information was being reported.

---

[2]*Id.*

25.     Upon receiving this report, Sentech terminated Mr. Doe's placement with Hazen Trucking, causing Mr. Doe to suffer lost wages, lost employment opportunity, emotional distress, mental anguish, frustration, humiliation, and embarrassment.

## First Advantage's Willful Failure to Maintain Reasonable and Strict Procedures

26.     The First Advantage report was erroneous.   Specifically, the First Advantage report included the following information about Mr. Doe:

```
State:              MI
County:             WAYNE
Case Number:        ██████████████
Offense:            LARCENY - FROM A MOTOR VEHICLE
Offense Date:       04/26/2009
Sentence:           MIPR
                    Maximum Sentence: 28 Days

                    Maximum Probation: 360 Days
Sentence Date:      07/02/2009
Disposition:
Disposition Date:   06/04/2009
Case Date:          05/21/2009
Current As Of:      02/19/2014
```

See Exhibit 1.

27.     This information was false and incomplete.

28.     Doe was charged with larceny from a motor vehicle and pled guilty under the provisions of the Holmes Youthful Trainee Act ("HYTA"), M.C.L. §

762.11.

29.     Under the provisions of HYTA, upon entry of a guilty plea, the court, "*without entering a conviction*" places the youthful offender into the status of a "youthful trainee" for a defined period of time.   M.C.L. § 762.11(1) (emphasis added).  The court may impose certain requirements on the youth during the period when he is designated as a "youthful trainee" such as maintaining certain educational or employment standards, or abiding by conditions of probation.

30.     If the individual abides by the court's conditions during the period of time when the individual is assigned youthful trainee status, then at the end of the period established by the court, the charges are dismissed and no conviction is ever entered.

31.     The purpose of HYTA is to ensure that youthful offenders do not have criminal conviction records which could permanently damage their ability to secure employment.

32.     Mr. Doe qualified for and received HYTA status from the court where his criminal case was pending.

33.     Mr. Doe completed his period as a "youthful trainee" without violation of the court's imposed conditions, and all criminal charges were dismissed pursuant to a Court order that was entered on April 15, 2010.

34.    The First Advantage report inaccurately and incompletely portrayed Mr. Doe's case.

35.    First, the report inaccurately stated that Mr. Doe was "sentenced" to "probation" on July 7, 2009.  This is incorrect. Mr. Doe was never convicted, and was therefore never sentenced. Instead, he was placed on youthful trainee status.

36.    Second, the report inaccurately stated that Mr. Doe's case was "disposed" on June 4, 2009. This is also incorrect. Mr. Doe's case was not disposed until April 15, 2010, when it was dismissed.

37.    Third, the report is inaccurate incomplete and not up to date because it fails to mention that the charges mentioned therein were dismissed in their entirety under HYTA on April 15, 2010.

38.    Finally, the report is inaccurate incomplete and not up to date because it states that the record it reported was "current" as of February 9, 2014.  This is inaccurate because, as of February 9, 2014, Mr. Doe's case had been dismissed, in its entirety. As of April 15, 2010, all records relating to Mr. Doe's arrest, and to his discharge or dismissal were deemed non-public. Under Michigan law, this means that the current public record status of Mr. Doe's case was that it was nonexistent.

39.    First Advantage knew the records it included on its reports regarding Mr. Doe were inaccurate.  Mr. Doe disputed the accuracy of the report, and First

Advantage produced an amended report, which omitted the HYTA case. This amended report, however, came too late to save Mr. Doe's job.

40.    First Advantage had also omitted the HYTA case from a prior report it produced on Mr. Doe to another potential employer, Dollar General.

41.    This inconsistency demonstrates that (1) First Advantage knew that the HYTA case should not have been reported but that (2) it did not have sufficient procedures in place to ensure that the information was actually kept of its reports.

42.    First Advantage has faced repeated suits for failing to comply with 15 U.S.C. §§ 1681e(b) and 1681k, but has failed to bring itself into compliance with the FCRA.  *See, e.g., Staples v. First Advantage LNS Screening Solutions, Inc.*, 1:14-cv-05735 (S.D.N.Y); *Dedering v. First Advantage LNS Screening Solutions, Inc.*, 2:15-cv-01538 (W.D. Wis.); *Brown v. Lowe's Companies, Inc., et al*, 5:13-cv-79 (W.D.N.C.); *Alfaro v. First Advantage Lns Screening Solutions, Inc.*, 3:15-cv-5813 (D.N.J.); *Lang v. First Advantage Background Services Corp.*, 1:15-cv-2436 (N.D. Ohio).

## Class Action Allegations

43.    Plaintiff seeks certification of the following proposed classes ("the Classes") in this matter.

    **a. HYTA Class:** All natural persons who were the subject of a report

sold by First Advantage within the preceding five years and whose report contains information concerning a criminal charge that was dismissed pursuant to HYTA prior to the date on which the report was issued but as to whom the report does not indicate that the charges were dismissed.

   **b. HYTA Sub-Class.**  All members of the HYTA Class whose reports were sold to a user who certified to Defendant First Advantage that the reports would be used for employment purposes.

44.   Excluded from the each of the Classes are officers and directors of Defendant; members of the immediate families of the officers and directors of Defendant; their legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

45.   This action is brought, and may properly be maintained, as a class action under Civil Rule 23.

46.   <u>Numerosity</u>:  membership in The Classes is so numerous that joinder of all class members is impractical.  Each of the Classes exceeds 100 members.

47.   <u>Typicality</u>:  Plaintiff's claims are typical of the class members' claims.  The FCRA violations committed by Defendants were committed pursuant

to uniform policies and procedures, and Defendants treated Plaintiff in the same manner as other class members in accordance with their standard policies and practices.

48.   Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class, has retained counsel experienced in complex class action litigation, and has no conflicts with the members of the class.

49.   Commonality:  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including without limitation:

(a)   Whether First Advantage utilized reasonable procedures to insure maximum possible accuracy;

(b)   Whether First Advantage utilized strict procedures to ensure that information it reported from public records was complete and up to date;

(c)   Whether Defendant's conduct was willful under FCRA; and

(d)   The proper measure of damages for Defendant's violations.

50.   The Classes all meet the requirements for certification to seek monetary relief under Rule of Civil Procedure 23(b)(3), as the questions of law or fact common to Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Classes even though certain members of the Classes are not parties to such actions. Further, a class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

      a.     Absent a class action, Class members as a practical matter will be unable to obtain redress; Defendant's violations will continue without remedy; and additional consumers will be harmed.

      b.     It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions.

      c.     When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Classes.

      d.     A class action will permit an orderly and expeditious administration of Class claims and foster economies of time, effort, and expense.

e.     The lawsuit presents no difficulties that would impede its

management by the Court as a class action.

f.     Defendant has acted on grounds generally applicable to Class

members, making Class-wide monetary and injunctive relief appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Maintain Reasonable Procedures to Insure Maximum Possible Accuracy
*(On Behalf of Plaintiff and the HYTA Class, Asserted Against Defendant First Advantage)*

51.     Section 1681e(b) of the FCRA provides:

> Whenever a consumer reporting agency prepares a
> consumer report it shall follow reasonable procedures to
> assure maximum possible accuracy of the information
> concerning the individual about whom the report relates.

52.     Under FCRA Section 1681e(b), First Advantage has a duty to "follow

reasonable procedures to assure maximum possible accuracy of the information" in

its Criminal History Reports.  *Id.* § 1681e(b).

53.     As set forth herein, when preparing the Criminal History Reports,

which are consumer reports, Defendant has lacked, and continues to lack,

reasonable procedures to assure the maximum possible accuracy of the information

contained in the Criminal History Reports. Defendant fails to follow such reasonable procedures because it knowingly, recklessly, and negligently fails to obtain up to date records from the courthouse, or to take other appropriate steps ensure that the records it reports contain complete information.

54. Instead, Defendant includes information about criminal charges that it learned about from its vendors or had in its databases, even when those criminal charges were not included in Defendant's own previous reports, and even when those criminal charges are inaccurate, out of date, and unreportable.

55. Defendant's liability to Plaintiff and the FCRA Class members arose from the same unlawful policies, practices, or procedures. In particular, Defendant failed to employ reasonable procedures to ensure maximum possible accuracy of the information in the consumer reports in question.

56. Defendant's violations of Section 1681e(b) were also willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

57. As a result of Defendant's unlawful actions and pursuant to Section 1681n and 1681o, Plaintiff and each Class member are entitled to any actual damages they sustained or damages of not less than $100 and not more than

$1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorney's fees as determined by the court. *See* Section 1681n(a)(1)(A), (2), and (3); and Section 1681o(a)(1), (2).

58.    Given Defendant's market power, the fact that class members are in the job market, and the fact that reporting a criminal charge can have devastating effects on an employment application, above-described willful and negligent violations present an ongoing threat to the HYTA Class.

## COUNT II
## 15 U.S.C. § 1681k
## Failure to Maintain Strict Procedures to Insure Records are Complete and Up to Date
*(On Behalf of Plaintiff and the HYTA Sub-Class, Asserted Against Defendant First Advantage)*

59.    Defendant First Advantage violated the FCRA by failing to maintain strict procedures to assure that public record information being reported which was likely to have an adverse effect on the consumer was complete and up to date. *See* 15 U.S.C. § 1681k(a).

60.    Defendant First Advantage further failed to provide consumers with contemporaneous notice that it was including public records information in reports about them, and to identify the entity to which such information was being reported. *See* 15 U.S.C. § 1681k(b).

61.    The foregoing violations were negligent and/or willful.    First Advantage acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681k(a).  In addition to the conduct set forth above, First Advantage's willful conduct is reflected by, *inter alia*, the following:

a.    The FCRA was enacted in 1970; First Advantage, which was founded in 1991, has nearly 25 years to become compliant;

b.    First Advantage is a corporation with access to legal advice through its own general counsel's office and outside employment counsel.    Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

c.    First Advantage knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the Act;

d.    First Advantage voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

e.    First Advantage's violations of the FCRA were repeated and systematic.

62.    Plaintiff and the Strict Procedure Class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

63.    Plaintiff and the Strict Procedures Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## Jury Demand

64.    Mr. Doe demands trial by jury.

## Request For Relief

65.    For the reasons set forth above, Mr. Doe requests that the Court Grant the following relief:

a.    Actual damages for items including lost wages, lost employment opportunity, emotional distress, mental anguish, frustration, humiliation, and embarrassment.

b.    Statutory damages in an amount to be determined at trial.

c.    Punitive damages in an amount to be determined at trial.

d.    Costs and attorney fees provided by statute.

e.    Any other relief the Court deems just.

Respectfully Submitted,

18

By:  s/ Ian B. Lyngklip
Ian B. Lyngklip P47173
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney for John Doe
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
PHONE:  (248) 208-8864
Ian@MichiganConsumerLaw.Com

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 387366
Joseph C. Hashmall, MN Bar No. 392610
43 SE Main Street, Suite 505
Minneapolis, MN 55414
PHONE: (612) 594-5999
Fax: (215) 875-3000
emdrake@bm.net
jhashmall@bm.net

Dated: April 14, 2016